IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF TEXAS
 
════════════
No. 05-0270
════════════
 
AIC Management, 
Petitioner,
 
v.
 
Rhonda S. Crews, Curtis 
Caldwell Crews, Annette Crews, Denise Claudeen Crews, and Claude Crews, Jr., the Heirs of Emma 
Crews, Valda Crews, and Eva Fay Gross, and Aldine Independent School 
District, Respondents
 
════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the First District of 
Texas
════════════════════════════════════════════════════
 
 
Argued January 23, 
2007
 
 
Justice O’Neill delivered the opinion of 
the Court.
Justice Willett filed a concurring 
opinion.
In this 
condemnation proceeding, we must decide whether property descriptions in a 
series of quitclaim deeds transferred through constable’s sales were insufficient as a matter of law to 
identify the lands to be conveyed, and whether the trial court, a county civil 
court at law in Harris County, had jurisdiction to decide the 
issue. We hold that, pursuant to section 25.1032(c)(1) of the Texas Government 
Code, the county court had jurisdiction to decide issues of title arising out of 
the condemnation suit irrespective of the amount in controversy. We further hold 
that the property descriptions’ adequacy to permit location of the land conveyed 
cannot be conclusively determined on this record, and therefore summary judgment 
voiding the conveyances was improper. Accordingly, we reverse the court of 
appeals’ judgment and remand the case to the trial court for further proceedings 
consistent with this opinion.
I. Background
            
The parcel of land at the center of this dispute was originally part of a 
single, jointly owned, 24.36-acre tract described by metes and bounds and 
located in “the T.S. Roberts Survey, 
Abstract No. 659, Harris County, Texas.” In 1984, the tract was partitioned into 
two smaller tracts. Tract One, the 8.51-acre tract at issue in this case, was 
conveyed to Emma Crews, Valda Crews, and Eva Fay Gross 
(collectively “the Crewses”). Tract Two, comprising 
the remaining 15.85 acres, was conveyed to Andrew C. Brown.[1] An exhibit to the partition deed 
described the Crewses’ property by metes and bounds 
within “the T.S. Roberts Survey, 
Abstract No. 659, Harris County, Texas.” 
            
In March 1989, the City of Houston sued the Crewses for unpaid ad valorem taxes for the years 1960 to 
1989 on what the City described as a six-acre portion of the 8.51-acre tract.[2] Harris County 
was joined as a party to the tax suit, but Aldine Independent School 
District, the other local taxing authority, was not. 
The tax-suit petition described the assessed property as follows:
 
Tract 12 
being 6.0 acres out of T.S. Roberts 
Survey Abstract 659 situated in Harris County, Texas, as shown in file number 
J659372 of the deed and plat records of Harris County, Texas.
 
 
The file 
number corresponded to the Harris County clerk’s file number for the 
partition deed. The final judgment in the tax suit does not reference the 
partition deed, but orders the City and County to recover against the Crewses for taxes and other fees levied on “TR 12 AB 659 
T.S. Roberts situated in Harris 
County,” and further orders the constable to seize and sell the property to 
satisfy the judgment.
            
Following the tax judgment, the constable attempted to sell the property 
at public auction. When there were no bidders, the City acquired the property 
through a constable’s deed in 1991. The constable’s deed references the tax suit 
and resulting judgment by cause number, and describes the property being 
conveyed as follows:
 
all of the 
estate, right, title and interest which the said Emma Crews, Valda Crews, and Eva Fay Gross had on the 5th day of 
February, 1991, or at any time afterwards, in and to the following land and 
premises, as described in said order of sale, viz:
 
TR 12 AB 659 
T S Roberts * situated in Harris 
County, Texas
 
 
            
AIC Management purchased the land from the City at a subsequent public 
sale in 1997. The 1997 constable’s deed also references the tax suit and 
judgment and describes the property being conveyed to AIC as “all of the state 
[sic], right, title and interest” in “TR 12 AB 659 T S Roberts * situated in Harris County” that the City 
had acquired under the 1991 constable’s deed.
            
About three years after AIC acquired the land, the City decided to expand 
George 
Bush Intercontinental Airport and filed a condemnation suit on 
the entire 24.36-acre tract. In the multi-party condemnation proceedings that 
followed, both the Crewses and AIC claimed ownership 
of the 8.51-acre tract. The Crewses moved for summary 
judgment, contending they still held title under the 1984 partition deed because 
the property descriptions in both subsequent constable’s deeds were too vague to 
allow the property to be located on the ground and were thus insufficient to 
convey title. Aldine intervened to collect delinquent taxes on the property out 
of the condemnation proceeds, claiming it still held a superior tax lien because 
it was not made a party to the City’s 1989 tax suit. AIC cross-claimed against 
Aldine, contending it had no liability for taxes that accrued prior to its 
acquisition of the property and that Aldine’s lien was extinguished when it 
failed to join the 1989 suit.
            
The trial court granted the Crewses’ motion for 
summary judgment, voided the constable’s deeds for insufficient property 
descriptions, and declared the Crewses the property’s 
sole owners. The court also granted summary judgment in Aldine’s favor and 
dismissed AIC’s cross-claim because AIC had no 
interest in the property. The court of appeals affirmed, holding that the Crewses held superior title under the 1984 partition deed 
because the constable’s deeds contained insufficient descriptions to allow 
location of the property with reasonable certainty and therefore failed to 
convey title. ___ S.W.3d ___. We granted AIC’s 
petition for review to consider the sufficiency of the property descriptions 
contained in the constable’s deeds and the county court’s jurisdiction to decide 
the issue.
II. Jurisdiction
            
AIC contests the jurisdiction of the trial court, a county civil court at 
law in Harris 
County, to resolve what it 
characterizes as a title dispute. We consider this point first.
            
AIC’s argument concerns the interplay between 
the amount-in-controversy limitations of the general jurisdictional grant to 
statutory county courts,[3] Tex. Gov’t Code § 25.0003, the 
exclusive jurisdictional grant to district courts for disputes involving title 
issues, Tex. Prop. Code § 21.002, 
and a more specific jurisdictional grant to statutory county courts in Harris 
County, Tex. Gov’t Code § 
25.1032. Generally, the subject-matter jurisdiction of statutory county courts 
is limited to “cases in which the matter in controversy exceeds $500 but does 
not exceed $100,000.” Id. § 25.0003(c)(1). Without reference 
to amounts in controversy, the Texas Property Code requires a county court at 
law before which an eminent-domain proceeding is pending to transfer the case to 
the district court upon determining that the controversy involves “an issue of 
title.” Tex. Prop. Code § 21.002. 
Finally, section 25.1032 of the Government Code contains, in pertinent part, the 
following specific jurisdictional grant to Harris County civil courts at law:
 
(a) A 
county civil court at law in Harris County has jurisdiction over all civil 
matters and causes, original and appellate, prescribed by law for county courts 
. . .
(c) A 
county civil court at law has exclusive jurisdiction in Harris County of eminent domain proceedings, both 
statutory and inverse, regardless of the amount in controversy. In addition to 
other jurisdiction provided by law, a county civil court at law has jurisdiction 
to:            
(1) decide the issue of title to real or personal property
 
* * * 
 
 
Tex. Gov’t Code § 25.1032.
            
Under section 25.1032’s plain language, the county civil courts at law in 
Harris 
County have exclusive 
jurisdiction over eminent-domain proceedings and may decide issues of title to 
real property. AIC contends, however, that this specific jurisdictional grant 
does not extend to title disputes which exceed the maximum $100,000 
jurisdictional limit for statutory county courts. Because the property at issue 
in this case exceeds $100,000 in value, AIC contends, section 21.002 of the 
Property Code divested the county court of jurisdiction and required transfer of 
the case to the district court. We disagree.
            
The $100,000 cap on county court jurisdiction appears in chapter 25 of 
the Government Code under subchapter A, entitled “General Provisions.” 
Id. § 
25.0003(c). The first section of that subchapter states that, “[i]f a provision of this subchapter conflicts with a specific 
provision for a particular court or county, the specific provision controls.” 
Id. § 
25.0001(a). Section 25.1032, which appears in subchapter C, defines the specific 
jurisdiction of county civil courts at law in Harris County. Id. § 25.1032. That section vests 
exclusive jurisdiction over eminent-domain proceedings in Harris County in the county civil courts at law. 
Id. § 
25.1032(c). Subsection (1) also grants those courts jurisdiction to decide the 
issue of title to real property, which section 25.1032(c) provides is “in 
addition to other jurisdiction provided by law.” Id. Section 25.1032(c)(1) thus 
bases the county civil courts’ jurisdiction on the type of claim, not the amount 
of money in dispute. See Haas v. Ashford Hollow Cmty. Improvement Ass’n, 209 
S.W.3d 875, 880 (Tex. App.—Houston [14th Dist.] 2006, no pet.); see also 
Taub v. Aquila Sw. Pipeline Corp., 93 S.W.3d 451, 
458 (Tex. App.— Houston [14th Dist.] 2002, no pet.); In re Burlington N. 
& Santa Fe Ry. Co., 12 S.W.3d 891, 899 (Tex. App.—Houston [14th Dist.] 
2000, no pet.). We conclude that, in Harris County, the county civil courts’ 
jurisdiction to decide issues of title arising out of condemnation proceedings 
is in addition to their general concurrent jurisdiction described in section 
25.0003(c) and is not dependent upon the amount in controversy.
            
AIC cites our decision in City of Houston v. West, 520 
S.W.2d 752 (Tex. 1975), to support its contention that the 
county court lacked jurisdiction to decide issues of title in this case. In 
West, which involved an eminent-domain proceeding, we held that an issue 
of title was involved that required transfer to the district court for 
resolution. Id. at 754. Our decision, though, 
preceded the Legislature’s specific jurisdictional grant to county civil courts 
at law in Harris 
County over eminent-domain 
and title issues, Tex. Gov’t Code 
§ 25.1032(c). Accordingly, our decision in West has no application 
here.
            
In interpreting statutes, we examine the language the Legislature chose 
and may also consider the object sought to be obtained. See id. § 
311.023(1). The legislative history indicates that section 25.1032, which vested 
exclusive jurisdiction over eminent-domain proceedings in Harris County 
in the county civil courts, was originally enacted to alleviate a caseload 
imbalance between underutilized county courts and overburdened district courts 
in Harris 
County. House Comm. on 
Judicial Affairs, Bill Analysis, Tex. H.B. 1110, 69th Leg., R.S. (1985). The 
statute was subsequently amended to “raise the amount in controversy limit . . . 
and expand [county courts’] jurisdiction with respect to other causes of 
action,” again due to the heavy pending caseload in the Harris County district courts and the 
availability of speedier resolution in the county courts. See Act of May 
15, 1989, 71st Leg., R.S., ch. 445, § 1, 1989 Tex. 
Gen. Laws 1605, 1606; Tex. Gov’t Code 
Ann. § 25.1032, Historical and Statutory Notes; Tex. Sen. Jurisprudence Comm., Bill 
Analysis, Tex. H.B. 1795, 71st Leg., R.S. (1989). The statutory language vesting 
jurisdiction in the county courts based on the type of claim rather than the 
amount in controversy is consistent with this purpose. We conclude that the 
county court at law had subject-matter jurisdiction to resolve any title dispute 
between AIC and the Crewses arising out of the City’s 
eminent-domain proceeding, and now turn to the deeds themselves.
III. The Constable’s Deeds
            
Before examining the particular conveyances presented, we first consider 
the standard by which the sufficiency of their property descriptions should be 
measured. To be valid, a conveyance of real property must contain a sufficient 
description of the property to be conveyed. A property description is sufficient 
if the writing furnishes within itself, or by reference to some other existing 
writing, the means or data by which the particular land to be conveyed may be 
identified with reasonable certainty. See Broaddus v. Grout, 258 S.W.2d 
308, 309 (Tex. 1953); see also 
Pickett v. Bishop, 223 S.W.2d 222, 224–25 (Tex. 1949); Smith v. Sorelle, 87 S.W.2d 703, 705 (Tex. 1935). Like any 
other conveyance of property, a judgment for foreclosure of a tax lien upon real 
estate which fails to describe a definite tract of land is void. See 
Arnold v. 
Crockett Indep. Sch. Dist., 404 S.W.2d 27, 28 
(Tex. 1966). A 
tax judgment’s property description must be sufficiently particular to allow a 
party to locate the specific land being identified. See Manges v. Freer Indep. Sch. 
Dist., 728 S.W.2d 842, 843 (Tex. App.—San Antonio 1987, writ ref’d n.r.e.).
            
In this case, the court of appeals held that a heightened standard 
applies when gauging the sufficiency of property descriptions contained in 
constables’ or sheriffs’ deeds made by virtue of execution sales. ___ S.W.3d ___. However, that distinction has 
not been the law in Texas for more than a century. See Hermann 
v. Likens, 39 S.W. 282, 284 (Tex. 1897) (stating “there should be no 
distinction in this respect between voluntary and involuntary conveyances”); 
Gallup v. Flood, 103 S.W. 426, 427 (Tex. Civ. App. 1907, writ ref’d) (holding that a more definite description of the 
property is not required for the efficacy of a sheriff’s deed as compared to a 
voluntary deed). Texas law does not require courts to scrutinize the proceedings 
of a judicial sale with a view to defeat them; instead, “every reasonable 
intendment will be made in their favor, so as to secure, if it can be done 
consistent with legal rules, the object they were intended to accomplish.” 
Hermann, 39 S.W. at 284 (quoting White v. Luning, 93 U.S. 514, 523 (1876)). Both voluntary 
and involuntary conveyances of land require a property description that would 
allow an individual to locate the conveyed property with reasonable certainty. 
We now turn to the property descriptions in issue.
            
The property in dispute is identified as “TR 12” in the 1991 and 1997 
constable’s deeds, and as “Tract 12 being 6.0 acres” in the tax-suit petition. 
The “Tract 12” description is a reference to the numbered “tax tracts” the 
Harris County Appraisal District (“HCAD”) uses to divide property for tax 
purposes. AIC contends this property description is adequate because, under 
Texas law, 
deeds that convey all of a party’s interest in a particular tract, abstract, 
survey, county, and state are sufficient as a matter of law. According to AIC, 
the constable’s deeds contain only one unambiguous property description 
conveying all of the Crewses’ ownership interest in 
the entire 8.51-acre tract, or at a minimum six acres of it. The Crewses, on the other hand, contend the tax judgment and 
subsequent deeds were insufficient to convey title because they lack adequate 
descriptors, such as metes and bounds, that would allow a person to locate the 
six-acre portion of the 8.51-acre tract upon which the City of Houston 
foreclosed its tax lien. Although we agree with the Crewses that the constable’s deeds are not a model of 
clarity, we cannot conclude based on the record presented that they are void as 
a matter of law.
            
The confusion apparently stems from the HCAD’s 
subdivision of the original 24.36-acre tract for appraisal and taxing purposes. 
HCAD maps from 1973 show that the taxing authority treated the 24.36-acre tract 
as 24 acres and labeled it as Tract 12. At some point not ascertainable from the 
record, Tract 12 was divided into eight three-acre tax tracts. A 2001 HCAD map 
shows those eight tracts, moving from east to west, as tax Tracts 12A, 12B, 12C, 
12D, 12E, 12F, 12, and 12G, respectively. It appears from 2001 tax statements 
that, at some point, HCAD had assessed 12 and 12G as one six-acre tract.[4]
            
Another 2001 HCAD map shows the eight tax tracts with Tracts One and Two 
from the partition deed sketched overtop. The sketches were drawn from a land 
survey that was conducted in 2000 based on the metes-and-bounds descriptions in 
the 1984 partition deed. The map shows that Tract One spans portions of tax 
tracts 12, 12G, 12F, and 12E; none of the tax tracts seem to lie entirely within 
the 8.51-acre Tract One as sketched on the map. The record does not contain a 
map showing how Tract 12 was situated at the time of the tax judgment in 1989. 
It is possible that the maps produced in 2001 reflect what the tax tracts looked 
like in 1989. It is also possible that in 1989, HCAD still designated or 
referred to the entire 24-acre portion of land as Tract 12. Or perhaps Tract 12G 
did not exist as a separate tract in 1989, so Tract 12 was the six acres labeled 
in 2001 as Tracts 12 and 12G. Without information from HCAD about how the tax 
tracts were drawn in 1989, we cannot determine whether the conveyance of all the 
Crewses’ interest in “Tract 12” was sufficient to 
allow identification of the property. In the past, we have considered similar 
descriptors to be sufficient or not depending upon additional available 
information.
            
In Arnold v. Crockett Independent School District, taxpayers 
described separate tracts of land in rendering their property for tax purposes, 
but grouped several tracts together in schedules. 404 S.W.2d at 29. For a number 
of years, the taxing authority made assessments on the property in bulk as to 
all the tracts within each schedule, a method the trial court incorporated into 
its judgment of foreclosure. We held that the judgment for delinquent taxes on 
several schedules was void because, although some of the tracts within each 
schedule were adequately described, other tracts could not be located with 
sufficient certainty. Id. at 28. For example, some tracts of land in the 
same schedule were identified simply as portions of floating acreage within an 
abstract and survey, such as “Abstract 926, Levi Speer Survey, 4.9 acres,” and 
“Abstract 926, Levi Speer Survey, 58 acres.” Id. at 29 n.1. Because the 
schedule contained both sufficient and insufficient property descriptions, the 
tax judgment was reversed with respect to the entire schedule. Id. at 29; 
see Adams v. Duncan, 215 S.W.2d 599, 603 (Tex. 1948) (holding conveyance 
of “four hundred eighty (480) acres of land [in Jasper County] out of a 640-acre 
survey patented to Wm. Duncan by the Republic of Texas, Feb. 26th, A.D. 1842, 
Abstract No. 136, Patent No. 173, Certificate No. 348, Vol. 1” void as not 
describing a definite tract of land). We remanded the case to the trial court 
with instructions that the court “receive proof of the properties . . . and 
describe the properties with such certainty in the judgment that they can be 
located and identified.” Id. at 29.
            
In Garza v. City of San Antonio, the court concluded that a tax 
judgment was void because it contained an insufficient property description. 231 
S.W. 697, 699 (Tex. Comm’n App. 1921, holding approved). The tract of land at 
issue in Garza was assessed in the tax rolls for several years as a 
five-acre plot, but following a transfer in title the same tract of land was 
assessed in the tax rolls as a two-acre tract. Id. at 700. The tax 
petition, which covered delinquent taxes for both the five-acre and two-acre 
assessments, described the property simply as “[o]ne tract of land described as 
old city block No. A-6, new city block No. A-6, situated on Trueheart Street, situated within the corporate limits of 
the city of San Antonio, Bexar County, State of Texas.” Id. at 698. We 
considered the property description in the petition sufficiently clear to 
identify the entire five-acre city block. But the tax judgment described the 
property foreclosed as “that certain tract of land fronting on Trueheart Street, within the corporate limits of the city of 
San Antonio, Bexar County, Tex., and situated in city block A-6, consisting of 
two acres of land.” Id. Because the judgment was for only two acres, and 
nothing in the petition or tax assessment records or judgment indicated which 
two acres, we held that the exact property could only be identified by 
“inference and conjecture”; thus, the property description was insufficient to 
convey title. Id. at 700.
            
In Willoughby v. Jones, we resolved a dispute similar to the one 
presented here. 251 S.W.2d 508 (Tex. 1952). The prior owners of Willoughby’s 
land, which he purchased following a tax judgment, brought a 
trespass-to-try-title suit claiming that the property description in the tax 
judgment was insufficient to convey title. Id. at 509. The tax judgment 
described the property as three separate tracts and included the total acreage 
for each tract; the judgment then listed the smaller units making up each tract, 
but with incomplete abstract, survey, certificate and block numbers. Id. 
at 510–11. We noted that the incomplete descriptions were “of dubious validity.” 
Id. at 511. However, we considered the judgment’s description in light of 
the description in the respondents’ petition, which identified the property by 
referencing three deeds in the property’s chain of title. Id. Due to the 
close correlation between the property descriptions in the three deeds and the 
description in the tax judgment, we held that the property the tax judgment 
intended to describe was ascertainable. Id. at 512. Accordingly, we 
affirmed summary judgment in Willoughby’s favor. Id. at 514.
            
The Willoughby decision highlights the Court’s willingness to read 
property descriptions in tax judgments alongside the property descriptions in 
related petitions and judgment rolls to identify the property conveyed, thus 
avoiding the inequity of erasing otherwise valid tax judgments at the public’s 
expense. At the same time, we recognize the fundamental policy underlying our 
decision in Garza that a judgment’s property description must be 
sufficient to allow location of the particular land conveyed. Garza, 231 
S.W. at 700.
            
In this case, indulging all inferences in favor of the non-movant AIC, we simply cannot tell whether the property 
descriptions that appear in the 1991 and 1997 constable’s deeds, read in light 
of the 1989 tax judgment and the underlying petition, are sufficient to allow 
location of the property on the ground. Throughout this litigation, the record 
reflects confusion arising from the HCAD’s division of 
tax tracts, which do not correspond to the division of ownership in the 1984 
partition deed. The City’s tax petition identifies the Crewses as defendants claiming interest in the tax-burdened 
land, and then describes the land upon which delinquent taxes are due as “Tract 
12 being 6.0 acres out of T.S. Roberts survey situated in Harris County, Texas, as 
shown in file number J659377 of the deed and plat records of Harris County, 
Texas.” The tax judgment against the Crewses is for 
taxes owed on “TR 12 AB 659 T.S. Roberts situated in Harris County.” What is clear is 
that the court in 1989 intended to convey all of the Crewses’ interest in the particular tract of land identified 
in HCAD tax records as “Tract 12,” at least part of which lay within the bounds 
of the Crewses’ property described in the partition 
deed.
            
The Crewses, citing our decision in Morrow 
v. Shotwell, 477 S.W.2d 538 (Tex. 1972), contend 
extrinsic or parol evidence may not be used to furnish 
the means or data by which the land to be conveyed may be identified. Id. 
at 540–41. There, the following property description was deemed insufficient 
because, despite the semblance of a metes-and-bounds description in the deed, a 
surveyor could not identify the following tract of land:
 
The North 
acreage (to be determined by a survey) out of 145.8 acre tract of the Jefferson 
McGrew Survey No. 245, which acreage lies North of a line beginning at the 
Northeast corner of the First Tract above described and running North 75 East to 
a point in the West Boundary Line of Public Highway No. 277, commonly known as 
the Anson-Hawley-Abilene Highway, Jones County, Texas.
 
 
Id. at 
539. Although the property could be identified with the aid of the parties, the 
deed itself did not refer to an existing writing but a nonexistent survey to be 
conducted in the future. The Morrow court affirmed that the essential 
elements of a property description may not be supplied by such extrinsic 
evidence; the deed must furnish within itself or by reference to some other 
existing writing the means or data by which the land to be conveyed may 
be identified with reasonable certainty. Id. at 541.
            
This case is easily distinguishable from Morrow, however, as HCAD 
records are not the type of extrinsic evidence we rejected in that case. The “TR 
12” in the property descriptions is an explicit reference, within the four 
corners of the deed, to existing writings, such as tax tract maps, within HCAD 
records. The property description in the constable’s deeds references “TR 12 AB 
659 T.S. Roberts * situated in Harris 
County,” which is a division within the HCAD tax rolls that can be used to 
assist a surveyor in locating the land. While the maps produced in 2001 could 
not locate the boundaries of Tract 12 at the time of the conveyance, if records 
still in existence from 1989 could identify the tract and where it overlapped 
the Crewses’ property, the description would be 
sufficient.
            
AIC contends the property descriptions here, which convey “all of the 
prior owner’s interest” in “TR 12 AB 659 T.S. Roberts * situated in Harris County,” are sufficient 
as a matter of law to convey all of the Crewses’ 
interest in the entire 8.51-acre Tract One. We have held that deeds in which the 
property is described as simply “my property” are sufficient when extrinsic 
evidence shows that the party owns only one tract of land answering the 
description. See Pickett v. Bishop, 223 S.W.2d 222, 223 (Tex. 1949). In 
such an instance, the stated ownership of the property is itself a matter of 
description. Id.; see also Sanderson v. Sanderson, 109 S.W.2d 744, 
746, 748 (Tex. 1937) (upholding as sufficient a contract that simply described 
property as “Mrs. Kelton’s farm in Haskell County” so 
long as that evidence established that Mrs. Kelton owned only one farm in 
Haskell County at the time). In this case, the Crewses 
conveyed all of their interest in “TR 12,” but the record does not demonstrate 
how Tract 12 was configured at the time. If the trial court were to find that in 
1989 HCAD designated the entire 24-acre tract as Tract 12, we agree with AIC 
that it would be entitled to all of the Crewses’ 
interest in the 8.51-acre Tract One. But if HCAD identified Tract 12 at the time 
of the 1989 tax judgment as something less, be it three acres, six acres, or 
something else, then AIC would be entitled to the part of Tract 12 that 
overlapped with the 8.51-acre Tract One, and the Crewses would retain whatever land remains.
            
The Crewses contend the tax petition’s 
description of Tract 12 as six acres, when compared with HCAD records which have 
identified Tract 12 as three and six acres at different points in time, is a 
source of ambiguity and invalidity. But we have held that the specification of 
acreage is the least reliable data point in descriptions of land “and will be 
rejected if it is inconsistent with the actual land conveyed.” Tex. Pac. Coal 
& Oil Co. v. Masterson, 334 S.W.2d 436, 439 (Tex. 1960). Here, 
the constable’s deeds broadly convey all of the Crewses’ interest in Tract 12. If HCAD records show the 1989 
version of Tract 12 clearly drawn on a map or described by metes and bounds, the 
less reliable references to acreage in the tax-suit petition will not render the 
description ambiguous or insufficient.
IV. Other Issues Raised by AIC
            
AIC argues that its cross-claims against Aldine should not have been 
dismissed. AIC’s cross-claims contend that Aldine’s 
tax liens were extinguished when it failed to join the 1989 tax suit, and that 
any taxes which accrued between 1980 and 1991 are the Crewses’ responsibility. Because the trial court awarded the 
property to the Crewses, it dismissed AIC’s cross-claims against Aldine without reaching the 
merits, reasoning that AIC did not have standing to bring such claims because it 
lacked any interest in the land. Because we reverse the summary judgment 
granting title to the Crewses, we also reverse the 
dismissal of AIC’s cross-claims against Aldine and 
remand those claims to the trial court.
V. Conclusion
            
We hold that the trial court, a county civil court at law in Harris 
County, had jurisdiction to decide issues of title arising out of the City’s 
condemnation proceedings, and that the record presented does not conclusively 
demonstrate that the property descriptions in the constable’s deeds were 
inadequate to convey title as a matter of law. Accordingly, we reverse the court 
of appeals’ judgment and remand the case to the trial court for further 
proceedings.
 
 
                                                                        
___________________________________
                                                                        
Harriet O’Neill
                                                                        
Justice
 
 
OPINION DELIVERED: January 
25, 2008







[1] 
Ownership of the 15.85-acre portion of the original tract was adjudicated in a 
separate suit and is not at issue in this appeal. See AIC Mgmt. v. Baker, 
___ S.W.3d ___ (Tex. App.—Houston [1st Dist.] 2003, pet. denied).

[2] 
The City based its tax suit on delinquent tax records that describe the property 
as “TR 12 AB 659 T S Roberts” in the 
amount of six acres (from 1968 to 1989) and three acres (from 1960 to 
1967).

[3] 
A “statutory county court” is defined as “a county court created by the 
legislature under Article V, Section 1 of the Texas Constitution, including 
county courts at law, county criminal courts, county criminal courts of appeals, 
and county civil courts at law, but does not include statutory probate courts as 
defined by Section 3, Texas Probate Code.” Tex. Gov’t Code § 21.009(2).

[4] 
The 1990 tax statements refer to a six-acre portion as “TR 12” from 1968 forward 
and make no reference to Tract 12G. From 1960 through 1967, “TR 12” is listed as 
consisting of three acres. The 2001 statements refer to a six-acre property as 
“TRS 12 & 12G” for all relevant years, and they reflect that the value of 
the property exactly doubled between 1967 and 
1968.